IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:18-cv-01755-RM-KLM

DAI HOANG, M.D.

    Plaintiff,

v.

ROBERT WILKIE, Secretary of Veterans Affairs,

    Defendant.

---

## ORDER
---

This matter is before the Court on the Recommendation of United States Magistrate Judge Kristen L. Mix filed on August 21, 2019 (ECF No. 51), which recommended granting Defendant Robert Wilkie's Motion to Dismiss Title VII Claims ("Motion") (ECF No. 13). On September 4, 2019, Defendant filed a Limited Objection (ECF No. 54). Plaintiff Dai Hoang filed her own Objection to the Recommendation (ECF No. 55), Defendant filed a Response (ECF No. 56), and Plaintiff filed a notice of supplemental authority (ECF No. 59).

**I.  BACKGROUND**

The magistrate judge's recommendation provides a clearer version of the facts than presented in the Complaint. (ECF No. 51, at 2–15.) This Court cannot discern a clear objection by either party to the magistrate judge's interpretation of the facts; however, Plaintiff does assert the magistrate judge ultimately reached an incorrect conclusion because Plaintiff omitted certain facts from her Complaint. (ECF No. 55, at 5–7) (arguing Plaintiff was a Veterans Affairs

employee for a period after her resignation in 2008).[1] However, a brief request for leave to amend a complaint in an objection to a magistrate judge's recommendation is improper. *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document."); D.C.COLO.LCivR 15.1 (motion for leave to amend or supplement a pleading shall attach as an exhibit a copy of the proposed amended or supplemental pleading which strikes through the text to be deleted and underlines the text to be added); *see also In re Gold Resource Corp. Securities Litigation*, 776 F.3d 1103, 1118–19 (10th Cir. 2015) ("The district court did not abuse its discretion in dismissing the complaint with prejudice where plaintiff's memorandum contained only one sentence at the very end of his brief alternatively requesting leave to amend in the event the district court should decide to dismiss his complaint."). Therefore, this Court will not entertain these new allegations.

Accordingly, the Court adopts the magistrate judge's statement of the facts as alleged in the Complaint and provides a summary of the factual allegations.

***Plaintiff's Employment and 2008 Equal Employment Opportunity Complaint.*** Plaintiff is a board-certified radiologist certified in the subspecialty of abdominal imaging and is also a female of Vietnamese descent. (ECF No. 51, at 2–3.) She alleges that during her employment as a staff radiologist in the Radiology Services Department at the Eastern Colorado Health Care System ("ECHCS"), which is a Veterans Administration ("VA") hospital in Denver, Colorado (the "Denver VA"), she was approached by her "first level supervisor," Dr. Elliot Sandberg who demanded that Plaintiff support him in defending an Equal Employment Opportunity ("EEO")

---

[1] The Court notes that the additional factual allegations have not necessarily been consistent. *Compare* (ECF No. 17, at 3 n.2) (asserting Plaintiff was employed by Defendant in its Bay Pines VAHCS in Ft. Myers, Florida in 2014–2015, and requesting leave to amend) *with* (ECF No. 55, at 5–6) (asserting Plaintiff was an employee between December 2012 and May 30, 2014).

2

complaint filed against him by another radiologist. (*Id.*) When Plaintiff refused, Dr. Sandberg began harassing Plaintiff sometime between 2007 and 2008. (*Id.* at 3.) As a result, Plaintiff filed her own EEO complaint on May 23, 2008. (*Id.*) Plaintiff eventually resigned a week later, on May 30, 2008. (*Id.*) Plaintiff settled her EEO case and withdrew her complaint on October 30, 2010 pursuant to a settlement agreement. (*Id.*)

*2006 Medical Malpractice Lawsuit and 2011 Office of Medical Legal Affairs ("OMLA") Reporting and Review.* On January 17, 2012, Plaintiff received a letter indicating she had been identified as having taken part in the care of a patient that had resulted in a medical malpractice lawsuit against the Denver VA. (*Id.* at 3–4.) The medical malpractice lawsuit was the result of a 2005 coronary artery bypass surgery where the surgical staff discovered a metal surgical clamp was missing. (*Id.* at 4.) While the patient was still on the operating table, Plaintiff reviewed an x-ray to determine whether there was a foreign body present. (ECF No. 1, ¶ 30.) However, due to the poor quality of the image, Plaintiff was unable to identify the missing clamp and did not request additional x-rays. (*Id.* ¶¶ 14, 40.) The clamp was found a fraction of an inch behind the patient's heart in March of 2006 after an MRI conducted by a private physician. (ECF No. 51, at 5.) The patient was ultimately successful in the lawsuit, receiving a judgment of $131,416.03, which was paid on January 14, 2011. (*Id.*) Plaintiff was not named in the medical malpractice lawsuit. (*Id.*)

Due to the result of the medical malpractice lawsuit, "a report had to be made to the VA's Office of Medical Legal Affairs (OMLA) for reporting a responsible physician to the National Practitioners Data Bank (NPDB)." (*Id.*) In approximately January of 2011, a report was made to OMLA, which identified Plaintiff and at least the surgeon in the 2005 surgery. (*Id.*) Between

2011 and 2013 ten Denver VA medical providers were identified to the OMLA as having been involved in the care of the patient in 2005 – the surgical staff, Plaintiff, and four other radiologists, including Plaintiff's supervisor, Dr. Sandberg. (ECF No. 1, ¶¶ 16, 17, 37, 38.)

Ultimately, the OMLA Review Panel, under the aegis of the OMLA director Dr. John Grippi, consisting of Drs. Norbert Kuberka, Joseph Ralabate, Tatum Johnson, and Dale Mueller concluded Plaintiff "should have communicated more effectively with the Cardiothoaracic team" to request additional x-ray views, two of which are "required to confirm or exclude the presence of a foreign body," and provided that Plaintiff be reported to the NPDB. (ECF No. 51, at 9.) The report was made and the NPDB issued a "Medical Malpractice" report on August 6, 2015 and initiated its own investigation. (*Id.* at 11–12.) Plaintiff continued to question the factual accuracy of the NPDB report until at least January 2017. (*Id.* at 12.)

*2015 EEO Complaint.* On January 9, 2015, Plaintiff filed an "informal" EEO complaint, presumably with the VA. (ECF No. 51, at 10.) The magistrate judge recognized that as of the filing of Plaintiff's informal EEO complaint, Plaintiff had worked at other hospitals in Illinois and Florida following her resignation from the Denver VA in 2008. (*Id.*) On March 31, 2015 Plaintiff filed a "formal" EEO complaint with the VA's Office of Resolution Management ("ORM"), which was "formally accepted" on April 24, 2015. (*Id.*) The status of the ORM proceeding is unclear. (*Id.* at 13–14.)

As a result of foregoing, Plaintiff filed this lawsuit asserting claims of retaliation, racial and gender discrimination, hostile work environment, and injunctive relief under Title VII arguing disparate treatment because she was the only non-white female radiologist who reviewed the medical malpractice plaintiff's x-ray films and the only radiologist ultimately reported to the

4

NPDB by the OMLA. (ECF No. 1.) Plaintiff also sought relief for alleged violation of the Administrative Procedures Act ("APA"). (*Id.*)

Defendant moved to dismiss Counts I–IV, the Title VII counts, under Fed. R. Civ. P. 12(b)(1) and Rule 12(b)(6). The magistrate judge correctly summarizes that if Defendant's Motion is granted in its entirety, the case would proceed only on Count V (violation of the Administrative Procedures Act ("APA")). (ECF No. 51, at 14–15.) The magistrate judge recommended granting the motion to dismiss with prejudice with respect to Count II (racial and gender discrimination) and III (hostile work environment) (ECF No. 51, at 19–23) and without prejudice as to Count I (retaliation) (*Id.* at 23–30). Both parties filed objections.[2]

## II. LEGAL STANDARD

### A. Review of a Magistrate Judge's Report and Recommendation

Pursuant to Fed. R. Civ. P. 72(b)(3), this Court reviews de novo any part of the magistrate judge's recommendation that is properly objected to. An objection is proper only if it is sufficiently specific "to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). "In the absence of a timely objection, the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

---

[2] Plaintiff did not explicitly respond to Defendant's limited objection; however, Plaintiff does address the recommended dismissal of the retaliation count (Count I) in her objection. Additionally, Plaintiff's Objection is titled as "limited," but there is virtually no part of the magistrate judge's Recommendation to which Plaintiff does not objection.

5

### B. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135–36 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). Conclusory allegations are insufficient. *See Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009). Instead, in the complaint, the plaintiff must allege a plausible entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A complaint warrants dismissal if it fails "*in toto* to render plaintiffs' entitlement to relief plausible." *Twombly*, 550 U.S. at 569 n.14 (italics in original). "In determining the plausibility of a claim, we look to the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard does not require a plaintiff to set forth a prima facie case for each element." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (citation, internal quotation marks, and alteration omitted).

### III. ANALYSIS

#### A. Administrative Exhaustion

Defendant argued Plaintiff only exhausted her administrative remedies with respect to two instances – when on December 11, 2014 she was informed by phone and by letter that she would be reported to the NPDB. (ECF No. 13, at 8, 9.) The magistrate judge found, on this record, that Plaintiff's claims were not subject to dismissal based on failure to exhaust. (ECF No. 51, at 17–19.) The magistrate judge assumed without deciding that Plaintiff exhausted her administrative remedies with respect to the following acts: (1) Plaintiff being intentionally

6

singled out as the only non-white female radiologist reported to the OMLA for investigation (about January 2011); (2) a phone call Plaintiff received informing her that she might be reported to the NPDB (December 9, 2014); (3) the letter correspondence informing Plaintiff she might be reported to the NPDB (December 11, 2014); and (4) Plaintiff being reported to the NPDB (August 6, 2015). No party objects to this finding and conclusion.[3] The Court finds no clear error in the magistrate judge's recommendation as to administrative exhaustion. Therefore, the Court also assumes Plaintiff exhausted her administrative remedies as to the alleged conduct.

### B. Defendant's Limited Objection (ECF No. 54)

The magistrate judge recommended dismissing Plaintiff's retaliation claim (Count I) of the Complaint, stating:

> as a currently working physician, any of the alleged retaliatory acts taken against Plaintiff could have potentially devastating impact on her career. . . . In light of Plaintiff's continued employment as a radiologist, Defendant's argument that a reasonable worker in Plaintiff's position could no longer file an EEO complaint[, because a former employee can no longer be retaliated against] is unavailing. This is especially so, considering that such an argument would effectively bar post-employment retaliation claims, which are expressly permitted. Thus, the Court finds that Plaintiff has plausibly alleged a materially adverse action with respect to her retaliation claim."

(ECF No. 51, at 25 (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997)).) Without deciding whether "reasonable employee" in this context, and even in its broadest reading (the reading most beneficial to Plaintiff), the magistrate judge determined it was ultimately without consequence, because "none of the alleged acts of retaliation are sufficiently linked to Plaintiff's protected activity—filing an EEO complaint against the Denver VA in 2008." (ECF No. 51,

---

[3] Likewise, neither party objects to the portion that recommends dismissing the injunctive relief claims as to Plaintiff's Title VII claim (Count IV) (*Id.* at 30). (ECF No. 51, at 18–19.) The Court finds no clear error in concluding that injunctive relief cannot be granted as to the counts for which Plaintiff cannot prove she is entitled to relief.

at 25.) In short, the magistrate found Plaintiff's Complaint lacked sufficient allegations to establish a causal connection between the protected activity and the retaliatory acts by stating, "[N]owhere in the Complaint . . . does Plaintiff allege that the members of the OMLA Review Panel knew of her EEO complaint and thus could have retaliated because of it." (*Id.*) Ultimately, the magistrate judge recommended dismissing Count I *without prejudice*.

"To state a prima facie case for retaliation under Title VII, a plaintiff must show (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." (ECF No. 51, at 23–24 (quoting *Khalik v. United Air Lines*, 617 F.3d 1188, 1193 (10th Cir. 2012)) (internal quotations omitted).) Defendant agrees that Plaintiff's Complaint fails to state a claim for retaliation under Title VII (Count I) as determined by the magistrate judge. (ECF No. 54, at 1–2.) Defendant objects, however, to the magistrate judge's brief consideration into the level of generality provided the phrase "reasonable employee."

Although Defendant separates his arguments into two sections, this Court reads the Limited Objection as seeking two alternative outcomes under a singular argument: (1) adopt only the portion of the magistrate judge's recommendation that relies on dismissal for lack of a causal connection between the protected activity and the alleged retaliatory acts; and (2) make the dismissal *with prejudice*. (ECF No. 54, at 2, 3, 7.) Notably, Defendant advises that the Court "could simply adopt that portion of the [r]ecommendation finding that Plaintiff does not adequately allege causation, which is sufficient to dispose of Plaintiff's putative retaliation claim." (*Id.* at 2 (citing 28 U.S.C. § 636(b)(1)).) Defendant argues, however, that if the Court

8

were to decide "whether Plaintiff's allegations are sufficient to plausibly allege a 'materially adverse action,'" which the Defendant implies the Court would be required to do to adopt the magistrate judge's recommendation *in toto*, "the Court should hold that Plaintiff's allegations are insufficient." (*Id.* at 3–7.)

The Court finds no reason to do so where the magistrate judge correctly determined that even presuming Plaintiff's argument regarding the definition of a "material adverse action" were correct, Count I must still be dismissed for failing to allege a causal connection.

Despite the "options" provided to this Court – either accept a less-than-total portion of the magistrate judge's recommendation regarding the retaliation claim or address the issue of "materially adverse action" – Defendant proceeds to argue that the dismissal of Count I should be with prejudice, because "leave to amend would be futile, *because Plaintiff cannot show a 'materially adverse action.'*"[4] (ECF No. 54, at 7–8 (emphasis added).) In other words, regardless of how this Court addresses the parts of the recommendation to adopt, Defendant argues the Court should decide whether Plaintiff could allege a "materially adverse action" despite disingenuously suggesting it could be avoided. (*Id.* at 2, 3, 8.) Simply put, Defendant has not persuaded the Court that Plaintiff's Count I should be dismissed with prejudice, and Defendant's Limited Objection is overruled.

**C. Plaintiff's Objection (ECF No. 55)**

    **i.    Employment Discrimination (Count II)**

---

[4] Defendant also argues that Plaintiff's failure to plead causation lends itself to dismissal with prejudice without specifying how it is otherwise futile to allow Plaintiff an opportunity to amend her Complaint to include such allegations. Simply because Plaintiff has not sufficiently alleged causation does not necessarily mean she cannot.

The relevant language from Title VII provides that "[a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16. This section "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976). The words "employees" and "applicants for employment" are markedly more limited in § 2000e-16 than compared to the non-federal Title VII equivalent. *See Spirides v. Reinhardt*, 613 F.2d 826, 829 (D.C. Cir. 1979) ("1972 amendments to Title VII cover only those individuals in a direct employment relationship with a government employer"). Accordingly, the magistrate judge concluded that because Plaintiff had resigned three years prior to the earliest alleged retaliatory act, and that "Title VII's general discrimination provision does not protect against discrimination that stems from acts occurring *after* employment," "Plaintiff failed to meet the threshold requirement of employment to sustain her discrimination claim against Defendant." (ECF No. 51, at 20–21.)

Plaintiff objects to this conclusion on the grounds that § 2000e-16 uses "employee" language similar to that in 42 U.S.C. § 2000e-3(a), which the *Robinson* court held included former employees. (ECF No. 55, at 1.) Defendant does not dispute the premise that Title VII allows for a former federal employee to seek redress for unlawful employment discrimination. (ECF No. 56, at 5.) Plaintiff, however, fails to address *Burlington Northern* and abandons her reliance on *Persichitte v. Univ. of Northern Colorado*, No. 05-cv-01508-PSF-PAC, 2006 WL 2790407 (D. Colo. Sept. 27, 2006). Specifically, in *Burlington Northern*, the Supreme Court distinguished between the discrimination and retaliation provisions of Title VII:

> The antidiscrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based

> status. The antiretaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. The substantive provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct.
> 
> To secure the first objective, Congress did not need to prohibit anything other than employment related discrimination. The substantive provision's basic objecting of "equality of employment opportunities" and the elimination of practices that tend to bring about "stratified job environments" would be achieve were all employment-related discrimination miraculously eliminated.

*Burlington Northern*, 548 U.S. at 63 (internal citations omitted). In other words, a claim brought under the substantive provision must arise as the result of employment-related discrimination. *See Persichitte*, 2006 WL 2790407, at *5 ("§ 2000e-2(a) . . . prohibits any unlawful discrimination 'against any individual, *with respect to his compensation, terms, conditions, or privileges of employment*.'" ); *Burlington Northern*, 548 U.S. at 62 (noting the same statutory language as limiting the scope of the discrimination provision, as opposed to the retaliation provision, which does not contain "such limiting words").[5]

Here, Plaintiff resigned from the Denver VA on May 30, 2008. A report was made in 2011 to the OMLA which, recommended reporting Plaintiff to the NPDB, which issued its own report around August 6, 2015. While the Court acknowledges it is certainly possible for a former

---

[5] Plaintiff's primary objection is a semantic one. Namely, Plaintiff objects to the implied conclusion in the recommendation that the discrimination *must* occur during employment to fall under the substantive provision of Title VII. (*See* ECF No. 51, at 21) ("Title VII's general discrimination provision does not protect against discrimination that stems from acts occurring *after* employment"). While Plaintiff is technically correct that Title VII's antidiscrimination provision is not so limited, she errs in arguing the conduct can occur at any time after employment and affect any aspect of her life. *See Hinshon v. King & Spalding*, 467 U.S. 69, 77 (1984) ("The benefit a plaintiff is denied need not be employment to fall within Title VII's protection; it need only be a term, condition, or privilege of employment. . . A benefit need not accrue before a person's employment is completed to be a term, condition, or privilege of that employment relationship."). The benefit, however, does have to be related to the employment or the possibility of employment in some manner. *See, e.g.*, *id.* ("Pension benefits, for example, qualify as terms, conditions, or privileges of employment even though they are received only after employment terminates."); *id.* at 74 n.5 ("Title VII also may be relevant in the absence of an existing employment relationship, as when an employer refuses to hire someone.");

11

employee to bring discrimination claims, Plaintiff here has not alleged acts of discrimination that could have affected her compensation, terms, conditions, or privileges of employment with the Denver VA. After *de novo* review, the Court overrules Plaintiff's objection as to her discrimination count (Count II), adopts the magistrate judge's recommendation, and grants dismissal of the same with prejudice.

      **ii.**    **Hostile Work Environment (Count III)**

The magistrate judge recommended dismissing Plaintiff's hostile work environment count on the grounds that the alleged factual basis for the claim occurred years after Plaintiff could have called the Denver VA her workplace. (ECF No. 51, at 22.)

Plaintiff objects to this conclusion and argues the count should be allowed to survive through discovery and determined on summary judgment. (ECF No. 55, at 7.) In support of her argument, Plaintiff alludes generally to the other sections of her objection without identifying which portions support a conclusion that she has stated a viable claim for a hostile work environment under Title VII. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (Title VII is viable when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"). Because Plaintiff's objection is not sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute, *see One Parcel of Real Prop.*, 73 F.3d at 1060, the Court finds no clear error in this portion of the recommendation. *See Summers*, 927 F.2d at 1167.

As previously stated, Plaintiff argues that at the very least she should be allowed to proceed to discovery on her hostile work environment claims. (ECF No. 55, at 7.) However,

discovery is not a tool to be used to cure pleading deficiencies. *Twombly*, 550 U.S. at 559 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process. . . ."). Her request is therefore denied.

### iii.  Retaliation (Count I)

As stated in section III.B, the magistrate judge recommended dismissing Plaintiff's Count I without prejudice, because "nowhere in the Complaint . . . does Plaintiff allege that the members of the OMLA Review Panel knew of her EEO complaint and thus could have retaliated because of it." (ECF No. 51, at 25); *see also supra* at 6, 7. In short, the magistrate judge found that Plaintiff had not sufficiently alleged a causal connection between the protected activity and the retaliatory act. *See Khalik*, 671 F.3d at 1193 (setting forth the elements of a retaliation claim). The magistrate judge addressed and rejected Plaintiff's four substantive arguments as to why her allegations should be sufficient: (1) a three-month gap between the settlement of her 2008 EEO complaint and her being singled out  establishes causation; (2) other factors such as "a pattern of antagonism" and "evidence gleaned from the record as a whole" establish causation; (3) a "cat's paw" theory applies and establishes causation; and (4) if all else fails, a motivating factor test (rather than a "but for" test) can establish causation. (ECF No. 51, at 26.) Plaintiff objects to the magistrate judge's treatment of each.

With respect to the first argument, the magistrate judge determined that "[u]nless the adverse action takes place soon after a plaintiff's protected activity, the passage of time in general, even by a few months, is insufficient to establish causation alone." (ECF No. 51, at 26 (citing *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (stating that a period of two or three months between plaintiff's protected activity and the alleged retaliation was "under

our precedents, probably too far apart . . . to establish causation by temporal proximity alone.")).) The magistrate judge correctly stated the proper focus is on the timing between the protected activity (Plaintiff's EEO activity) and the adverse action ("the negative findings of the OMLA Review Panel regarding Plaintiff's review of the x-ray"), and "even considering the earliest alleged act of retaliation, Plaintiff's protected activity is removed by a period of at least three months." (ECF No. 51, at 26.) This led to the magistrate judge to conclude that "Plaintiff must allege other facts supporting an inference of causation." (*Id.*)

Plaintiff purports to object to the magistrate judge's finding that three months is insufficient on its own to establish an inference of causation. (ECF No. 55, at 8.) However, Plaintiff does not explain the basis for the objection and clarifies her argument in her next sentence: "The Plaintiff had argued that this time period *plus* a pattern of antagonism and evidence gleaned from the complaint as a whole plausibly alleged causation." (*Id.*) (emphasis added). Indeed, it appears Plaintiff's true argument is that the timing *and other contextual factors* sufficiently allege causation. Because the Court finds Plaintiff's objection to the magistrate judge's application of *Meiners* insufficient, the Court finds no clear error in the determination that the timing *alone* is insufficient to form a plausible allegation of causation.

That being said, Plaintiff argues she does not simply rely on the timing of the adverse action but on a laundry list of allegations collectively which establishes the plausibility that the OMLA- and NPDB-related activity was retaliation for having filed an EEO complaint in 2008 and settled it in 2010. For example, Plaintiff argues that her Complaint alleges Dr. Sandberg "and people they supervise" at the Denver VA had communications or dealings with the OMLA. (ECF No, at 19.) However, as correctly observed by the magistrate judge:

> No member of the OMLA Review Panel, all of whom are named in the Complaint [#1] at paragraph 39, is alleged to have any knowledge of Plaintiff's EEO complaint, nor is alleged to have had a personal relationship with Dr. Sandberg, nor is alleged to have even worked with him and Plaintiff at the Denver VA. Absent the OMLA Review Panel members' knowledge of Plaintiff's EEO complaint, there is no link between any alleged retaliatory acts and Plaintiff's protected activity, even if Plaintiff's Complaint is construed to allege that Dr. Sandberg, acting as an agent or employee of the Denver VA, retaliated against her by orchestrating inclusion of her actions in the OMLA review. . . . Plaintiff has provided no allegations which suggest that the OMLA's finding, after an approximately three year review process, was in any way linked to unlawful retaliation, as the Panel members had no knowledge of Plaintiff's previous EEO complaint against Dr. Sandberg."

(ECF No. 51, at 27) (collecting cases). After a *de novo* review, this Court concludes Plaintiff's "record as a whole" argument fails to establish the plausibility of causal connection between the protected activity and the alleged retaliatory acts against Plaintiff.[6]

With respect to Plaintiff's cat's paw argument, the magistrate judge determined it failed for much the same reason – Plaintiff never alleges the ultimate decisionmaker knew of the 2008 EEO complaint or that the OMLA's investigation was influenced by Dr. Sandberg *who was himself even reported to the OMLA*. (ECF No. 51, at 28, 29); *see also Ward v. Jewell*, 772 F.3d 1199, 1205 (10th Cir. 2014) (under the "cat's paw" theory, the biased motive of a subordinate can be imputed to the final decisionmaker, but the theory does not apply when decisionmakers conduct their own investigations without relying on biased subordinates). Plaintiff essentially

---

[6] It should be noted that Plaintiff attempts to chip away at the recommendation in ways that in no way affect the ultimate conclusion. For example, Plaintiff argues whatever the OMLA did was not an "investigation" as described by the magistrate judge and that because *she* was not interviewed and was not provided certain documents, the *OMLA* could not have been conducting an investigation. (ECF No. 55, at 15.) Plaintiff does, however, admit that three years elapsed between the initial reporting to the OMLA and to the reporting of Plaintiff to NPDB. (*Id.*) Plaintiff also argues that the magistrate judge incorrectly stated the number of radiologists who were eventually reported to the OMLA. (ECF No. 55, at 16.) However, this is a distinction without a difference. Not only was Plaintiff not the only radiologist reported to the OMLA, there were four others. (ECF No. 1, at ¶ 38.) It matters not that one lesser radiologist was reported than that stated by the magistrate judge; what matters is that other radiologists besides Plaintiff were reported to the OMLA for review.

argues that she does not know whether other radiologists were in fact treated disparately; she does not even know what they said to the OMLA. What she knows, however, is she was the only radiologist reported to the NPDB, and the only possible reason must be disparate treatment. It simply *could not* be the result of an independent investigations into her own actions. (*See* ECF No. 55, at 17) (her treatment is plausibly inexplicable absent a bad motive). This argument is unpersuasive.

Finally, Plaintiff argues that this Court should depart from the Tenth Circuit's "but for" causation standard applied to federal sector retaliation claims because of *Babb v. Wilkie*, 140 S. Ct. 1168 (2020). *See Ward*, 772 F.3d at 1203; *Laul v. Los Alamos Nat'l Labs.*, 765 Fed. App'x 434, 442 (10th Cir. 2019) (holding that the plaintiff failed to provide sufficient evidence showing that "his protected activity *caused*" the adverse action) (emphasis added). Plaintiff argues that the *Babb* court's adoption of the motivating factor standard as applied to § 633a(a) of the Age Discrimination in Employment Act's ("ADEA") (25 U.S.C. § 633a(a)) "free from any" language is similar to the language in Title VII. (ECF Nos. 55, at 18, 19; 59.) In her objection, Plaintiff argues there existed a circuit split prior to *Babb*, which is why the Supreme Court accepted certiorari. (ECF No. 55, at 19.) However, in her supplemental authority filing, Plaintiff appears to admit that there existed no circuit split as to Title VII language – *Babb* only addresses § 633a(a).[7] (ECF No. 59, at 1.) In any event, the Court concludes that under either standard, Plaintiff has failed to sufficiently allege causation as to her retaliation claim.

---

[7] Plaintiff acknowledges as much: "Consistent with its 'little bites' approach, the Supreme Court took the ADEA issue. . ." (ECF No. 59, at 2.)

## IV. CONCLUSION

Based on the foregoing and a *de novo* review of the portions of the Recommendation to which either party sufficiently objected, it is ORDERED:

(1) That Defendant's Limited Objection (ECF No. 54) is OVERRULED;

(2) That Plaintiff's Objection (ECF No. 55) is OVERRULED;

(3) That the magistrate judge's Recommendation (ECF No. 51) is ADOPTED as stated herein; and

(4) That Defendant's Motion to Dismiss Title VII Claims (ECF No. 13) is GRANTED;

    a. That Plaintiff's Counts II and III are DISMISSED with prejudice; and

    b. That Plaintiff's Count I is DISMISSED without prejudice.

DATED this 21st day of October, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge