IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 18-cv-01755-RM-KAS

DAI HOANG, M.D.,

    Plaintiff,

v.

DOUGLAS A. COLLINS, Secretary, Department of Veterans Affairs,[1]

    Defendant.

## ORDER

Before the Court is Plaintiff's Opening Brief in support of her claim brought under the Administrative Procedure Act ("APA") (ECF No. 137), which the Court construes as a Petition for judicial review. *See* 5 U.S.C. § 702. Defendant has filed a Response (ECF No. 138), but no Reply has been filed. The Court denies the Petition for the reasons below.

**I.  BACKGROUND**

From 2004 to 2008, Plaintiff worked as a radiologist at a Veterans Administration hospital in Denver, Colorado ("Denver VA"). In August 2005, a surgical clamp was inadvertently left in the chest of a patient undergoing a triple bypass surgery. The retained clamp was not discovered until months later, when the patient underwent an MRI at a different facility. The patient successfully sued the Denver VA for medical malpractice, obtaining a judgment of $130,000 in September 2010.

---

[1] Douglas A. Collins was sworn in as the Secretary of Veterans Affairs in February 2025 and is automatically substituted as a party under Fed. R. Civ. P. 25(d).

The Denver VA reported the judgment to the Office of Medical Legal Affairs ("OMLA"), which conducted an investigation.  Plaintiff, whose role in the patient's care was to interpret a chest x-ray taken after the surgery to rule out the presence of a foreign body, was informed of the investigation and permitted to provide a written statement.

In her statement, she stood by her analysis of the x-ray, offering several interlinking explanations for her failure to detect the retained clamp:

- she was not advised that a clamp had gone missing during the surgery (ECF No. 98-2 at 41);

- "[a] clamp would be expected to be of much greater density on a radiograph because of its larger size and greater metallic composition" (*id.*);

- a "foreign body" usually refers to a sponge, not a clamp (*id.*);

- other expected objects with densities similar to that of a clamp were present, including wires, sutures, and a catheter (*id.*);

- "[t]his particular image was of suboptimal quality and not sufficient for detection and identification of a clamp" (*id.* at 42);

- a lateral view is required to determine an object's location, which was not possible at the time due the patient's very recent surgery (*id.* at 43); and

- the clamp was obscured due to poor radiographic technique and because it was located behind the heart (*id.* at 43).

In essence, Plaintiff asserted that "[t]he clamp was not identifiable on the single frontal portable chest radiograph and looked like other expected surgical hardware."  (*Id.* at 42.)  She further asserted that other radiologists who reviewed the patient's x-rays had not been able to identify the clamp.  (*Id.* at 43-44.)

The OMLA concluded that Plaintiff (as well as the attending surgeon) provided substandard care.  (*Id.* at 82-83.)  In its report, the four-member review panel stated that "at least

2

2 views are required to confirm or exclude the presence of a foreign body" and concluded that Plaintiff should have communicated more effectively with the surgery team and should have requested additional imaging due to "the opacity in the right apex of the lung." (ECF No. 103-1 at 9.) Although the opacity referred to in the report was not a retained foreign body, the panel concluded that a lateral chest x-ray would have revealed the presence of the retained clamp. (*Id.*) Therefore, according to the report, the patient "had a delay in diagnosis of the retained foreign body which constituted substandard care" for which Plaintiff was responsible. (*Id.*)

Due to the OMLA report, Plaintiff and the attending surgeon were reported to the National Practitioner Data Bank ("NPDB") in 2015. Once again, Plaintiff took the opportunity to provide a statement regarding her role in the patient's care. The NPDB issued its own report in August 2015.

Plaintiff filed this lawsuit in 2017, arguing that she received disparate treatment because she was the only non-white, female radiologist who reviewed the patient's x-rays, and asserting claims for racial and gender discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964. She also sought relief under the APA. Following the dismissal of her Title VII claims and the denial of her request for leave to amend her Complaint, only her APA claim remained. (*See* ECF Nos. 60, 96.) In January 2023, the magistrate judge issued a Joint Case Management Plan establishing a briefing schedule for the APA claim, which is now ripe for review. (ECF No. 96.)

## II.     LEGAL STANDARD

Under the APA, a reviewing court must set aside an agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review under the "arbitrary and capricious" standard is narrow, and a court will

3

not substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A decision is arbitrary and capricious if it relies on factors which Congress did not intend the agency to consider, entirely fails to consider an important aspect of the problem, offers an explanation that is contrary to the evidence before the agency, or is so implausible it cannot be ascribed to a difference in view or the product of agency expertise. *Id.* "[A]n agency's action must be upheld, if at all, on the basis articulated by the agency itself," and courts do not accept post hoc rationalizations for agency action. *Id.* at 50. However, a presumption of validity attaches to agency action, and the burden of proof rests with the party challenging the action. *Citizens' Comm. to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008).

**III.   DISCUSSION**

Though the Complaint is not entirely clear, it appears the OMLA's decision to report Plaintiff to the NPDB is the final agency decision that provides the basis for her APA claim. (*See generally* ECF No. 1, ¶¶ 96-104.) In her Brief, Plaintiff faults the OMLA for failing to consider (1) whether she was told about the missing clamp; (2) whether a lateral chest x-ray could have been performed at the time; and (3) who reviewed the radiology reports. (ECF No. 137 at 13-21.) The Court addresses each of Plaintiff's arguments in turn.

*First*, Plaintiff cites no evidence to support her contention that the OMLA failed to consider whether she was told about the missing surgical clamp. In her written response to the OMLA, Plaintiff explained that "[a]t the time I was asked to review the image, I was not advised that the surgical team was concerned that a surgical clamp was unaccounted for." (ECF No. 98-2 at 41.) This is consistent with the medical record, which shows that Plaintiff was instructed to rule out the presence of a foreign body, not a surgical clamp specifically. Plaintiff has adduced

no evidence that the OMLA disregarded her statement or the other evidence, and her argument alone is insufficient to overcome the presumption of validity that attaches to agency action.

Moreover, Plaintiff has also not established that the OMLA could not have reasonably concluded she provided substandard care unless she was told specifically about the missing clamp. The x-ray request instructed her to rule out foreign bodies, using the terminology "R/O F.B." (ECF No. 99-1 at 128). In her statement, she explained that it is uncommon for a surgical clamp to go missing and that a "foreign body . . . is usually a sponge." (ECF No. 98-2 at 41.) But this does not mean that the OMLA could not have reasonably concluded Plaintiff failed to meet the standard of care unless she was specifically advised to look for a clamp. Plaintiff cites no authority to the contrary.

Plaintiff's attempt to shift the blame to the attending surgeon or other doctors who viewed the medical record is also unavailing. Plaintiff has not shown that these doctors played a role comparable to hers as a radiologist reviewing an x-ray while the patient was still on the operating table. Thus, their purported failure to identify the retained clamp does not establish that the OMLA acted arbitrarily and capriciously by concluding that Plaintiff failed to meet the standard of care applicable to her under the circumstances.

*Second*, Plaintiff has not shown the OMLA's decision is deficient because the panel failed to consider whether a lateral x-ray was possible. As pertinent here, the thrust of the OMLA's report is that Plaintiff should have better communicated with the surgery team. If, as she now asserts, Plaintiff was unable to rule out the presence of a foreign body based on the poor quality or singular perspective of the x-ray presented, she could have indicated in her report that the x-ray was insufficient to make a conclusive analysis and requested additional imaging, regardless of whether it was possible or feasible to take a lateral chest x-ray while the patient was

5

still on the operating table.  The OMLA's report suggests that if Plaintiff was unable to rule out the presence of a foreign body based on the information before her, requesting additional imaging and communicating more effectively could—and likely would—have helped identify the retained clamp much sooner.  Plaintiff has not shown this explanation is contrary to the evidence, implausible, or otherwise invalid.

*Third*, Plaintiff appears to argue that she could not have provided substandard care because other doctors who looked at the patient's x-rays failed to identify the surgical clamp.  But, as discussed above, even if other practitioners failed to identify the clamp at different stages of the patient's care, that does not absolve Plaintiff of her duty to adequately perform her role as a radiologist in the context of this case.  Nor is such evidence sufficient to overcome the presumption of validity that attaches to the OMLA's decision.

## IV.     CONCLUSION

Applying the narrow scope of review to the current record, the Court finds Plaintiff has not met her burden of showing that the OMLA's conclusion that she provided substandard care was arbitrary and capricious.  Therefore, the Court DENIES the Petition (ECF No. 1) and directs the Clerk to CLOSE this case.

DATED this 8th day of May, 2025.

BY THE COURT:

_____
RAYMOND P. MOORE
Senior United States District Judge

6